UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**EDWARD A. SHREFFLER**　　　　　　　　　　**CIVIL ACTION**

**versus**　　　　　　　　　　　　　　　　　　**NO. 12-1316**

**ROBERT TANNER, WARDEN**　　　　　　　　**SECTION: "S" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Edward A. Shreffler, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center, Angie, Louisiana. On February 8, 2010, he entered pleas of guilty in the following cases in the Louisiana Twenty-Second Judicial District Court: (1) in Case No. 380891, he pleaded guilty to three counts of distribution of MDMA and one count of possession

with intent to distribute MDMA; (2) in Case No. 380893, he pleaded guilty to one count of possession with intent to distribute marijuana; (3) in Case No. 406677, he pleaded guilty to one count of possession of marijuana, third offense; (4) in Case No. 423608, he pleaded guilty to one count of possession with intent to distribute marijuana; and (5) in Case No. 465571, he pleaded guilty to one count of possession of marijuana, third offense.[1] On February 12, 2010, he was sentenced as follows: (1) in Case No. 380891, after he pleaded guilty to being a second offender, he was sentenced as such on each count to a term of twenty-five years imprisonment without benefit of parole, probation, or suspension of sentence; (2) in Case No. 380893, he was sentenced to a term of twenty years imprisonment; (3) in Case No. 406677, he was sentenced to a term of ten years imprisonment; (4) in Case No. 423608, he was sentenced to a term of twenty years imprisonment; and (5) in Case No. 465571, he was sentenced to a term of ten years imprisonment. It was ordered that all of those sentences be served concurrently.[2]

On or about May 23, 2010, petitioner filed with the state district court a "Motion to Correct Illegal Multiple Sentence."[3] That motion was denied on June 14, 2010.[4] His related writ

---

[1] State Rec., Vol. II of VI, transcript of February 8, 2010.

[2] State Rec., Vol. II of VI, transcript of February 12, 2010; State Rec., Vol. II of VI, minute entries dated February 12, 2010; see also State Rec., Vol. II of VI, Reasons for Judgment dated March 3, 2010.

[3] State Rec., Vol. II of VI.

[4] State Rec., Vol. II of VI.

applications were then denied by the Louisiana First Circuit Court of Appeal on December 17, 2010,[5] and by the Louisiana Supreme Court on November 18, 2011.[6]

In the interim, on or about January 4, 2011, petitioner filed with the state district court an application for post-conviction relief.[7] That application was denied on January 25, 2011.[8] Petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on June 7, 2011,[9] and by the Louisiana Supreme Court on April 9, 2012.[10]

On May 7, 2012, petitioner filed the instant federal application for *habeas corpus* relief.[11] The state concedes that the federal application is timely and that petitioner exhausted his remedies in the state courts.[12]

---

[5] State v. Shreffler, No. 2010 KW 1829 (La. App. 1st Cir. Dec. 17, 2010); State Rec., Vol. III of VI.

[6] State *ex rel.* Shreffler v. State, 75 So.3d 452 (La. 2011) (No. 2011-KH-0011); State Rec., Vol. III of IV.

[7] State Rec., Vol. III of VI.

[8] State Rec., Vol. III of VI, Order dated January 25, 2011.

[9] State v. Shreffler, No. 2011 KW 0273 (La. App. 1st Cir. June 7, 2011); State Rec., Vol. III of VI.

[10] State *ex rel.* Shreffler v. State, 85 So.3d 135 (La. 2012) (No. 2011-KH-1474); State Rec., Vol. III of VI.

[11] Rec. Doc. 3.

[12] Rec. Doc. 10, pp. 3-4.

## I. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an

incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

## II. Petitioner's Claims

Petitioner claims that his guilty pleas were involuntary because they were induced by the state's promise that he would not be charged as multiple offender, an alleged promise that was subsequently broken. In a related claim, he also contends that the state breached the plea agreement by charging him as a multiple offender.

"It is beyond dispute that a guilty plea must be both knowing and voluntary." Parke v. Raley, 506 U.S. 20, 28 (1992). The terms "knowing" and "voluntary" "are frequently used interchangeably, although, strictly speaking, the terms embody different concepts." United States v. Hernandez, 234 F.3d 252, 254 n.3 (5th Cir. 2000). A "knowing" plea is one where the defendant is aware of the direct consequences of his plea, whereas a "voluntary" plea is one not induced "by threats, misrepresentation, unfulfilled promises, or promises of an improper nature." Id.

When a *habeas* petitioner challenges the validity of his plea, he carries the burden of proving his plea was not in fact knowing and voluntary. See, e.g., Hines v. Louisiana, 102 F. Supp. 2d 690, 694 (E.D. La. 2000). For the following reasons, it is clear that he has not met his burden of proof in this case.

In the state post-conviction proceedings, the state district court rejected petitioner's claims, holding:

> [P]etitioner claims that his guilty plea "was entirely predicated upon his not being adjudicated a habitual offender," and was therefore not knowingly made, as he was sentenced as a habitual offender. ... [T]he Court has reviewed the transcript of the proceedings taken on February 8, 2010, as well as the minutes of the plea relied upon by petitioner. The transcript is clear that the district attorney agreed that any multiple bill would be capped at a double bill. The Court specifically asked petitioner if he understood that a multiple bill would be filed at the time of his sentencing if the prerequisites existed. Petitioner responded that he did. Moreover, the Court advised petitioner that he would be allowed to withdraw his plea of guilty at the time of sentencing if the substance of the plea agreement was not in accordance with his understanding. Petitioner failed to raise any objections at the time of his sentencing, and admitted the allegations contained in the multiple offender bill. Thus, the Court

finds that petitioner entered into the guilty plea knowingly and voluntarily.[13]

Without additional reasons assigned, petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[14] and by the Louisiana Supreme Court.[15]

The state court's decision is fully supported by the record. The transcript reflects that, prior to the pleas being entered, defense counsel, Salvador Liberto, Jr., stated on the record and in petitioner's presence that "[t]here is going to be a double bill, and the sentence is going to be 25 years."[16] At that point, petitioner stated that he could not validly be charged as multiple offender because his prior charges had been quashed.[17] The prosecutor, Leigh Anne Wall, then stated:

> *If that is true*, Your Honor, the State won't be able to file a multiple bill based on those charges. I certainly have no intention of filing a multiple bill based on charges that were quashed.
> ....
> *If Mr. Shreffler is correct*, and I'm not able to multiple bill him on anything, then I can't file a multiple bill, *but we will determine that on Friday.*[18]

---

[13] State Rec., Vol. III of VI, Order dated January 25, 2011.

[14] State v. Shreffler, No. 2011 KW 0273 (La. App. 1st Cir. June 7, 2011); State Rec., Vol. III of VI.

[15] State *ex rel.* Shreffler v. State, 85 So.3d 135 (La. 2012) (No. 2011-KH-1474); State Rec., Vol. III of VI.

[16] State Rec., Vol. II of VI, transcript of February 8, 2010, p. 2.

[17] State Rec., Vol. II of VI, transcript of February 8, 2010, pp. 2-3.

[18] State Rec., Vol. II of VI, transcript of February 8, 2010, pp. 3-4 (emphasis added).

The judge then reiterated the agreement for the record:

> BY THE COURT:
> What we are going to do is, we are going to accept – take his plea today provided that we get through the Boykin process, and then I was going to set your felony sentencing in these matters on Friday.
> *If Ms. Wall, then, has the prerequisites to file a multiple bill, her multiple bill will be filed on Friday.* If she doesn't, she doesn't. Then we will proceed on Friday without the multiple bill. Understood?
>
> BY MR. SHREFFLER:
> Yes, ma'am.
>
> BY MR. LIBERTO:
> *But it would still be capped at a double bill?*
>
> BY MS. WALL:
> *Exactly.*
>
> BY THE COURT:
> *Exactly. No matter what it is, it's going to be capped at double bill, that's her agreement.*
>
> BY MR. LIBERTO:
> Just wanted to make that clear.
>
> BY THE COURT:
> That is her agreement.[19]

Based on that agreement, petitioner then entered his guilty pleas.[20] In doing so, he was specifically informed by the trial judge that he would be allowed to withdraw his guilty pleas at the sentencing hearing if the sentences were not in accordance with his understanding of the plea agreement.[21]

---

[19] State Rec., Vol. II of VI, transcript of February 8, 2010, pp. 4-5 (emphasis added).

[20] State Rec., Vol. II of VI, transcript of February 8, 2010, pp. 6-16.

[21] State Rec., Vol. II of VI, transcript of February 8, 2010, pp. 12-13.

The following Friday, the state filed a multiple bill of information charging petitioner as second offender as agreed, and, without any objection whatsoever or any request to withdraw his pleas to the underlying offenses, petitioner pleaded guilty to that multiple bill of information and was sentenced.[22]

Based on the foregoing, there is no factual basis for petitioner to argue that he was unaware that he could be charged as a second offender or to argue that the plea agreement was in any way breached. Accordingly, petitioner has failed to meet his burden of proof with respect to these two claims, and, under the deferential standards of review mandated by the AEDPA, the claims must be rejected.[23]

Lastly, petitioner claims that he was wrongly adjudicated a second offender because the state failed to meet its burden to prove that he had a valid predicate conviction. The Court can easily dispose of this claim as well, because, as noted, petitioner *pleaded guilty* to the multiple bill of information. As the United States Fifth Circuit Court of Appeals has explained:

> In Zales v. Henderson, 433 F.2d 20, 24 (5th Cir. 1970), this Court held that a habeas corpus petitioner who pleaded guilty to enhancement charges in an habitual offender hearing "waived any

---

[22] State Rec., Vol. II of VI, transcript of February 12, 2010.

[23] It appears that petitioner may also be arguing that this rights were violated because, prior to the entry of his pleas, the state withdrew a more favorable bargain originally offered. Even if that in fact occurred, it is of no moment. Under Louisiana law, "[a]bsent any showing of detrimental reliance prejudicial to the substantial rights of the accused, or evidence of devious practice by the government such as bad-faith negotiation designed to psychologically probe the defense or gain some other improper advantage, the government remains free to withdraw from a plea agreement up to the time the plea is entered." State v. Caminita, 411 So.2d 13, 16 (La. 1982); see also State v. Givens, 776 So.2d 443, 455-56 (La. 2001). Petitioner has not shown either that such conditions existed in this case or that this rule of state law in any way violates federal constitutional law.

complaints he may have had concerning the former offenses which were set out in the enhancement charge." We deemed the guilty plea, in the context of an habitual offender trial, to be "both the alpha and the omega of our determination." Id. at 22. We have often echoed this conclusion. See, e.g., Long v. McCotter, 792 F.2d 1338, 1340 (5th Cir. 1986); Vail v. Procunier, 747 F.2d 277, 278 (5th Cir. 1984); Scott v. Maggio, 695 F.2d 916, 922 (5th Cir.), cert. denied, 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983); Kemph v. Estelle, 621 F.2d 162, 163 (5th Cir. 1980). In Long, we stated that

> "[a] plea of 'true[ ]' ... relieves the State of its burden of proof and, as such, provides the basis for the Zales waiver doctrine.... When a 'true' plea has been entered, Zales appears to prohibit subsequent collateral attacks on prior convictions in any context, whether denominated an attack on only the prior conviction, independently of the enhanced sentence, or an attack on the enhanced sentence by way of a prior conviction." Id. at 1341 (footnote omitted).

Johnson v. Puckett, 930 F.2d 445, 449 (5th Cir. 1991).

Because petitioner pleaded guilty to the multiple bill of information and has not challenged that plea as involuntary, he is now precluded from claiming that he was wrongly found to be a second offender. Therefore, this claim must likewise be rejected.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Edward A. Shreffler be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[24]

    New Orleans, Louisiana, this ninth day of July, 2012.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[24] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.